AO 108 (Rev. 06/09) Application for a Warrant to Seize Personal Property Subject to Forfeiture   AUTHORIZED AND APPROVED/DATE:  6-25-20

# UNITED STATES DISTRICT COURT
### for the

## WESTERN DISTRICT OF OKLAHOMA

**FILED**

JUN 25 2020

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____.DEPUTY

|  |  |
|---|---|
| In the Matter of the Seizure of | ) |
| *(Briefly describe the property to be seized)* | ) |
| Contents of JP Morgan Chase Bank Account, | ) |
| Chase ATM Card 5017 2400 0283 9332, | ) |
| in the name of Justin Lulla | ) |

Case No. M-20-300-STE

### APPLICATION FOR A WARRANT
### TO SEIZE PERSONAL PROPERTY SUBJECT TO FORFEITURE

I, Kyle Cunningham, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the Western District of Oklahoma is subject to forfeiture to the United States of America under 18 U.S.C. § 981(b), and 21 U.S.C. §§ 853, 853(f) and 881(b) for violation of 21 U.S.C. §§ 841(a)(1) and 846, *(describe the property)*:

**Contents of JP Morgan Chase Bank Account, Chase ATM Card 5017 2400 0283 9332, in the name of Justin Lulla**

The application is based on these facts:

See attached Affidavit of Task Force Officer Kyle Cunningham, Drug Enforcement Administration, which is incorporated by reference herein.

☒ Continued on the attached sheet and made a part hereof.

_____
*Applicant's signature*

KYLE CUNNINGHAM
Task Force Officer
Drug Enforcement Administration

Sworn to before me and signed in my presence.

Date:   June 25, 2020

_____
*Judge's signature*

City and State:   Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEIZURE WARRANT

I, Kyle Cunningham, a Task Force Officer with the United States Drug Enforcement Administration in the Oklahoma City District Office, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Council on Law Enforcement Education and Training (C.L.E.E.T.) certified law enforcement officer for the State of Oklahoma, since 2009.   I am currently employed by the Edmond Police Department have been so employed for approximately 11 years.   I was a patrolman for approximately 6 years of my law enforcement career.  The other 5 years have been in the Criminal Investigations Division. I am currently assigned to the Special Investigations Division, which primarily focuses on narcotics investigations.  I have been assigned to the Drug Enforcement Administration (DEA) Task Force Group in Oklahoma City for approximately five (5) years as a Deputized Federal Task Force Officer.  I have been involved in numerous narcotics investigations on a local, state, and federal level.  I have received specialized training in illegal drug-related investigations.

2.      I have had conversations with and been in the company of other experienced local, state, and federal law enforcement officers as well as prosecuting attorneys representing both state and federal systems concerning narcotics and dangerous drug trafficking activities and criminal violations. I have also worked in the company of other experienced law enforcement officers and have discussed their investigative techniques

1

and experiences with them. In the course of investigations, which I have been party to, I have become familiar with the clandestine business practices of drug traffickers and illicit drug trafficking organizations.

3.      I have received advanced training provided by the DEA involving the detection and recognition of criminal organizations and their respective activities, which may include narcotic and gang related offenses. I have also been involved in numerous narcotic investigations on state, federal and international levels, which have resulted inapprehension of persons on narcotic and narcotic related charges during my career as a investigator, as well as the seizure of drugs, property and monies. I have participated in numerous investigations of illegal narcotics trafficking, which have involved the trafficking of cocaine, methamphetamine, heroin, and marijuana.

4.      I have conducted and participated in investigations that have resulted in the seizure of multi-kilogram quantities of cocaine, multi-kilogram quantities of heroin, multi-pound quantities of methamphetamine, and multi-pound quantities of cultivated and processed marijuana, as well as the seizure of large sums of U.S. currency in narcotics proceeds. I am familiar with, and have participated in all the normal methods of investigation, including but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the use of grand jury investigations, and the utilization of undercover agents.

5.      Based on my training, experience and my participation in investigations of drug trafficking organizations, I know confidential sources, witnesses and even the members of the organization have limited knowledge of the organization as each may

operate within different compartments of the organization. My training and experience has shown me that organizations are frequently secretive and compartmentalized within themselves and are set up in such a way that persons within an organization do not know all the other members of the organization and their respective roles. This manner of operation insures the insulation of the organization from law enforcement in the event there is an arrest and cooperation by an organization member. The result is that the remaining members of the organization will be able to remain in place and continue to operate despite the cooperation efforts of the person arrested.

6.      Based on my training, experience and my participation in other investigations involving controlled substances, I know drug traffickers and distributors utilize communication devices, specifically cellular telephones, pagers, computers and the internet to maintain contact with their sources of supply, distributors or customers as well as those charged with the responsibility to transport the controlled dangerous substances along the routes of distribution.

7.      Additionally, I know devices such as cellular telephones and computers may also contain lists of electronically received and/or dialed numbers, text messages, voice messages, e-mails as well as an address book reflecting names and telephone numbers or other data of associates, all of which would be evidence of the illegal drug trafficking and a conspiracy to unlawfully transport, possess with intent to distribute and/or distribute marijuana, cocaine, heroin and methamphetamine, in violation of 21 U.S.C. § 841(a)(l) and 846.

8.      I know drug traffickers commonly maintain on hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business or as drug proceeds. I know drug traffickers often maintain books, records, receipts, notes ledgers, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances, even though such documents may be in code. I am aware drug traffickers commonly "front" drugs (provide controlled substances on consignment) to their clients. Based on my training and experience, I believe the aforementioned books, records, receipts, notes, ledgers, etc. are commonly maintained where the drug traffickers have ready access to them, i.e., homes, offices, automobiles.

9.      I believe, based on training and experience, it is common for drug dealers to hide contraband, proceeds of drug sales and/or records of drug transactions, drug sources, and drug customers in secure locations within residences, the curtilage of residences, offices, garages, storage buildings, automobiles, banks and safe deposit boxes for ready access as well as to conceal such items from members of law enforcement. I also believe, based on my training and experience, persons involved in drug trafficking conceal caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities in their residences, the curtilage of residences, offices, garages, storage buildings, automobiles, banks and/or safety deposit boxes.

10.     I know that drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers for their associates in the drug trafficking organization, even if said items may be in code, and that such traffickers send and receive items listed in this affidavit by mail and other common carriers. In my experience as a drug investigator, I have found that illegal drug trafficking and manufacturing is a continuing activity over months and even years. Illegal drug traffickers and manufacturers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and similarly such drug traffickers will have an "inventory," which will fluctuate in size depending upon the demand for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending well beyond the time during which the trafficker actually possesses illegal controlled substances, in order that the trafficker can maintain contact with his criminal associates for future drug transactions, and so that the trafficker can have records of prior transactions for which, the trafficker might still be owned money or might owe someone else money.

11.     I am currently participating in an investigation of a heroin and fentanyl importation, transportation, and distribution organization. The targets of this investigation are believed to be involved in the laundering of drug proceeds as well as smuggling and transportation of drugs, including heroin and fentanyl, from Mexico into the United States, which are distributed in the Western District of Oklahoma.

## PROPERTY TO BE SEIZED

12.     The United States submits this affidavit in support of seizure warrants and forfeiture of the following property:

> A.      Contents of Chase Bank Account under ATM Card 5017240002839332; Account Holder – Justin LULLA (DOB XX/XX/1987, SSN XXX-XX-9608); maintained by JPMorgan Chase Bank, 1111 Polaris Parkway, Columbus, Ohio 43240 **(Subject Account #1);**

## BASIS FOR FORFEITURE

13.     This Affidavit is submitted for the purpose of seizing currency, which is held in a Chase Bank, ATM Card 5017240002839332, in the name of Justin LULLA, for violations of 21 U.S.C. § 846.

14.     Based upon training, experience and facts known to myself and other law enforcement officers that are conducting this investigation, I believe, based on the Investigation revealed below, there is probable cause to establish the above JPMorgan Chase Accounts contains U.S. currency (USC), drug proceeds in violation of the United States Code as indicated above.

15.     During a joint Oklahoma City Police Department (OCPD) and DEA Oklahoma City District Office investigation, an OCPD Confidential Informant (CI) provided information on the drug trafficking activities of Justin LULLA. The CI identified LULLA as a person residing at 3609 SW 43rd Street in Oklahoma City.  According to the CI, LULLA obtained heroin from Dallas, Texas, and fentanyl from California, which would be distributed in the Oklahoma City area. LULLA drives both a Tan Toyota Tundra and a Mercedes sedan. The CI identified a previous booking photo of Justin LULLA as

his/her drug source.

16.    On or about May 12, 2020, the CI's person was searched for any illegal contraband. The CI was given $200.00 in OCPD's Officially Authorized Funds with instructions to purchase heroin from LULLA. The CI contacted LULLA over the phone and agreed to meet at an undisclosed location within Oklahoma City, Oklahoma. An OCPD Officer drove the CI to the undisclosed location where the deal was to occur. While officers conducted surveillance, they observed LULLA leave the residence at 3609 SW 43rd Street in Oklahoma City, driving the gray Toyota Tundra truck. LULLA eventually drove to the undisclosed location to meet the CI. The CI got out of the vehicle and met with LULLA. A short time later, the CI got back in the vehicle and handed officers a baggie wrapped in aluminum foil, inside the baggie was a brown substance, which later tested positive for heroin, approximately 33.6 gross grams. The heroin has since been sent to the DEA South Central Lab for analysis.

17.    On May 26, 2020, at approximately 5:15 a.m., the OCPD received a call for service referencing an unattended death at 3609 SW 43rd Street in Oklahoma City. Oklahoma City Fire Department and EMSA personnel were already on scene and pronounced the victim, D.H. (DOB: XX/XX/1958), deceased at 5:23 a.m. Responding officers spoke with David Bennett (DOB: XX/XX/1952) and his daughter Dixie Bennett (DOB: XX/XX/1979). Both informed officers that D.H. was a heroin user. They said that D.H. entered the bathroom and used heroin and returned to the bedroom, where D.H. began nodding out. Dixie Bennett also identified another male, Roger Pratt as also living at the residence, but he had departed on foot prior to the officers' arrival. Officers contacted an

additional male, LULLA, sleeping in the Southwest bedroom (converted garage). While contacting LULLA in this room, Officers observed in plain view a money counter, several clear empty baggies, and clear baggies with pills. Officers escorted Dixie Bennett, David Bennett, and LULLA out of the residence, where they were detained. The OCPD's Impact Unit was requested to the scene, due to the drug activity observed at the residence.

18.     At approximately 9:54 a.m., OCPD Officer Allan Cruz provided an Affidavit and Warrant to Oklahoma County Special Judge Mark McCormick requesting authorization to search the residence of 3609 SW 43rd Street in Oklahoma City, Oklahoma. Judge McCormick reviewed and signed the warrant for the address of 3609 SW 43rd Street in Oklahoma City.

19.     At approximately 11:00 a.m., members of OCPD Special Projects Unit executed the search warrant at 3609 SW 43rd Street in Oklahoma City. Investigators found a Black Safe in the Southwest bedroom (converted garage), which was removed from the room and placed in the front yard. Investigators forced entry into the safe and located a Black Smith and Wesson, M & P 9mm (Serial No. NBN3620), with the magazine loaded. This firearm was confirmed stolen per a NCIC database check. "I have spoken with agents from the Bureau of Alcohol Tobacco and Firearms and provided them the details of this firearm. They have informed me that their preliminary opinion is that the Smith & Wesson was manufactured outside of the state of Oklahoma and therefore travelled in interstate commerce to reach the State. Additionally, an Oklahoma Tax Commission Motor Vehicle Division document was found inside the safe in the name of Justin Michael LULLA at 3609 SW 43rd Street in Oklahoma City. Investigators also found a large blue money bag

in the Southwest bedroom containing three smaller plastic baggies which contained the following: 9.8 grams of methamphetamine, 13.7 grams of heroin, and 48.7 grams of fentanyl (confirmed by South Central Lab). A digital scale with what appeared to be residue was also seized from the Southwest bedroom. The surface of the scale field tested positive for heroin. Also, located in the Southwest bedroom (converted garage) was approximately $13,295.00 in U.S. currency, a large amount of Blue pills with imprints of "M" and "30" (excess of approximately 330), and LULLA's Department of Corrections I.D. Card. Also, a Chase ATM Card 5017 2400 0283 9332 with the name of Justin LULLA.

20.     Through my training and experience, I believe the Blue Pills "M" over "30" pills are counterfeit oxycodone (pressed with fentanyl), due to the amount of pills, no prescription available, and the availability of other controlled substances in the room, including confirmed fentanyl powder. In collaboration with other law enforcement investigators, I learned the street value for these pills are approximately $20.00-$40.00 in U.S. currency per pill. A median price per pill would put an estimated street value of near $10,000.00 on the pills. Additionally, LULLA had approximately 48 grams of fentanyl powder. Fentanyl Powder has a street value of approximately $20.00 to $40.00 per .1 gram. Once again utilizing the median price per .1 gram of fentanyl would put an estimated street value of approximately $14,400.00 in U.S. currency.

21.     LULLA was escorted to the OCPD Spring Lake Division. LULLA was read the *Miranda* Waiver per the OCPD *Miranda* Form. In brief, LULLA told investigators the following. LULLA woke up by being told someone was dead inside the residence. LULLA knew D.H. was using marijuana, cocaine, and drinking alcohol, but did not know she was

using heroin. LULLA picked up heroin, approximately $20.00 worth or .2 grams, for D.H. on one occasion approximately two months ago. D.H. provided the money and LULLA went to get the heroin. LULLA travels to Tijuana, Mexico, to acquire drugs for personal use, via bus. LULLA has a difficult time obtaining the drugs, due to poor connections. The interview was ended, due to what investigators characterized as LULLA's lack of truthfulness. LULLA was taken into custody and booked into the U.S. Marshals cell block in Pottawatomie County.

22.     On May 28, 2020,  your affiant sent an Administrative Subpoena to JP Morgan Chase Bank for Account Identifiers for Chase ATM Card 5017 2400 0283 9332. On June 18, 2020, your affiant received a response from JP Morgan Chase Bank identifying Justin LULLA, as the sole name on the account with an address of 3609 SW 43rd Street in Oklahoma City, Oklahoma.

23.     Lastly, cooperating defendants informed your affiant LULLA does not have a legitimate full time employment.  The DEA and OCPD conducted surveillance on LULLA, and observed no pattern in LULLA's daily life, which would indicate a legitimate employment. A cursory query with the Oklahoma Employment Security Commission, revealed no records on file for LULLA.

## CONCLUSION

24.     I believe probable cause exists that in Oklahoma City, Western District of Oklahoma, there exists a bank account at JPMorgan Chase Bank, Chase ATM Card 5017 2400 0283 9332, containing U.S. currency, which represents drug proceeds from the drug

trafficking activities of Justin LULLA. **Subject Accounts #1** are subject to forfeiture pursuant to 21 U.S.C. § 853.

Respectfully submitted,

_____

KYLE CUNNINGHAM
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on June 25, 2020.

_____

SHON T. ERWIN
United States Magistrate Judge

11